UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| EXTREME NETWORKS, INC.,                 ) | |
|               Plaintiff,    ) | |
|               v.    ) | Civil Action No. 07-C-0229-C |
| ENTERASYS NETWORKS, INC.,    ) | |
|               Defendant.    ) | |

**DEFENDANT ENTERASYS NETWORKS, INC.'S MEMORANDUM IN
SUPPORT OF MOTION FOR PROTECTIVE ORDER AND TO
<u>PRECLUDE LATE ADDITION OF ASSERTED CLAIMS</u>**

Defendant Enterasys Networks, Inc. ("Enterasys") seeks this Court's protection from Plaintiff Extreme Networks, Inc.'s ("Extreme's") recent decisions to increase the number of asserted claims against Enterasys from eleven (11) to seventeen (17). On the day before the exchange of expert reports, Extreme seeks to change the entire scope of the litigation by: 1) asserting additional claims; and 2) changing the invention date for its family of asserted patents. These last minute changes severely prejudice Enterasys.

At a time when the parties should be narrowing the issues for trial,[1] Extreme asserted six new dependent claims in late November. When confronted by Enterasys, Extreme dropped three of the new claims, only to assert three different dependent claims from another patent the day before the parties exchanged expert reports. Extreme's stated rationale for the late disclosure is the recent deposition testimony of an Enterasys employee and/or recently produced documents that allegedly support the new claims. But this explanation is flawed on several levels. First, the deposition in question occurred after Extreme served six new infringement claims on November

---

[1] For example, to narrow the issues and the prepare the case for trial, Enterasys is no longer asserting one of its three patents and also dropped a previously asserted claim on the '181 patent.

1

21, 2007. Second, Extreme's alleged supporting evidence has been in its possession for several months. Indeed, these documents are the same ones used by Extreme to support its earlier infringement contentions. Third, when a patent holder adds a dependent claim late in the proceedings, after originally asserting only the related independent claim, the focus is not infringement, but the invalidity of the independent claim.

The close proximity between Extreme's assertion of additional claims and the parties' exchange of expert reports on December 7, 2007, prejudices Enterasys. Because Extreme asserted these claims over the course of the past two weeks (and in the case of three claims less than twenty-four hours ago), Enterasys cannot evaluate the claims, investigate their applicability to the accused Extreme products, or perform an invalidity investigation before submitting its expert report on these topics. Thus, Enterasys' reports cannot contain an analysis on the new claims, which is critical to establishing the evidentiary support for the upcoming filing of dispositive motions. Pushing back the deadline to exchange the rebuttal expert reports would create additional problems. That delay would shorten the three week timeframe between the service of rebuttal reports and the filing of dispositive motions. But more importantly, Enterasys will be further prejudiced by being forced to divert significant time and effort away from preparing motions and rebuttal reports in order to investigate and prepare an initial report on the six new claims. And, Enterasys would not see a rebuttal report on its invalidity contentions until after Enterasys files its dispositive motions.

Extreme has had numerous opportunities earlier in the litigation to add claims. Indeed, Extreme added two infringement claims without objection back in August, and should have added these claims at that time, especially because all the new claims are dependent in nature. Accordingly, Enterasys requests that this Court must prevent Extreme from increasing the

2

number of asserted claims from eleven to seventeen and should issue an order precluding Extreme from doing so.

## I.  FACTUAL BACKGROUND

Extreme filed this patent infringement suit against Enterasys on April 20, 2007. In response to Interrogatory No. 1 of Enterasys' first set of interrogatory requests, Extreme stated on July 6, 2007, that Enterasys infringed five claims of U.S. Patent No. 6,104,700 (10, 14, 21, 28, 29), 2 claims of U.S. Patent No. 6,678,248 (1,15) and two claims of U.S. Patent No. 6,859,438 (1, 5). Based on Extreme's interrogatory answer, Enterasys served its non-infringement contentions in August 2007, wherein Enterasys disclosed in detail how and why the accused Enterasys products do not infringe the asserted claims.

On June 5, 2007, the Court set forth the discovery schedule in its Pre-Trial Conference Order ("the Order"). The Order revealed an expedited timeframe and required the parties to disclose by mid-October 2007 all information necessary to understand the scope and breadth of the case. Thus, the parties exchanged asserted claims in July, proposed claim constructions on August 17, 2007, and filed initial and responsive claim construction briefs on September 10, 2007 and October 1, 2007, respectively. This Court held its Markman hearing on October 12, 2007, and addressed the parties' proposed interpretations of the contested claim terms. The Markman ruling was issued on November 21, 2007, which Enterasys received on November 27, 2007, due to the Thanksgiving Holiday.

On October 5, 2007, Extreme filed its first supplemental response to Enterasys' first set of interrogatories. That response, served before the Markman hearing, asserted two additional claims on the '700 patent (claims 13 and 26).[2] Then, six weeks later, on November 21, 2007, Extreme served a fourth supplemental response. (*See* McKenna Decl., Exhibit A). This response

---

[2]  In or around August 2007, Extreme notified Enterasys of its intention to assert these additional two claims.

3

revealed Extreme's intention to add six additional dependant claims (claims 2-4 and 6-8 of the '438 patent). *Id.* Upon returning from the holiday break, Enterasys immediately notified Extreme by letter dated November 27, 2007, that adding claims in late November is improper. (*See* McKenna Decl., Exhibit B).

The parties held a meet-and-confer on December 3, 2007, to discuss the problems surrounding the late claim assertions. (*See* McKenna Decl., ¶ 6). In that meeting, Enterasys reiterated its demand that Extreme remove the late filed six additional claims. *Id.* Extreme's counsel promised to look into the late disclosure and respond to Enterasys promptly. *Id.* Two days later on December 5, 2007, Extreme's counsel alleged that Extreme's late claims were due to Enterasys producing documents late as well as some recent deposition testimony. (*See* McKenna Decl., ¶ 7). Extreme did not, however, provide a definitive answer as to whether Extreme would withdraw the claims. *Id.*

The very next day, Extreme decided again to change the scope of the case. After the close of business on December 6, 2007, twenty hours before the exchange of expert reports, Extreme served a fifth supplement to its interrogatory responses. (*See* McKenna Decl., Exhibit C). While Extreme dropped three of the six claims added in late November, it asserted three new dependent claims from a different patent (claims16-18 of the '248 patent). *Id.* Once again, Extreme claimed that its late disclosure resulted from recently produced documents and deposition testimony.[3] (*See* McKenna Decl., Exhibit D). The documents used to assert the additional claims, however, are the same documents used in prior infringement charts prepared by Extreme.

This motion followed.

---

[3] Although not within the main purpose of this memorandum, three hours after Enterasys deposed the last known inventor of Extreme's family of patents asserted in this case, Extreme notified Enterasys that it was changing the date of invention of the patents. (*See* McKenna Decl., Exhibit D). This tactic is representative of Extreme's conduct of withholding critical information, thus forcing Enterasys to submit reports and take depositions based upon Extreme's incomplete disclosures.

4

## II.　ARGUMENT

**A.　Extreme can provide no justifiable reason to include six additional claims at this late stage of the litigation.**

Given the Court's venue, as well as the accelerated discovery schedule, Extreme as the plaintiff cannot justify its decision to add dependent claims either the day before the exchange of expert reports or in late November. Extreme chose the forum and venue, which is known to schedule cases in an expedited manner. Moreover, although the Court's June 5, 2007 Pre-Trial Conference Order ("the Order") does not expressly delineate a cutoff date to assert additional infringement claims, the Order emphasizes the Court's desire for the early disclosure of the parties' respective positions. Thus, the Order requires the parties exchange contested claim terms in August, attend a Markman hearing in October, and exchange expert reports in early December. Such a schedule mandates that the parties know early on which claims will be asserted, and permits the Court and the parties to quickly and efficiently move the case towards trial. As the case is past the Court's Markman ruling, the parties should be reducing the number of asserted claims within the case.[4] Extreme's decision to increase the amount of asserted claims from 11 to 17 contravenes such expectations.

Moreover, adding dependant claims at this late stage cannot be justified where Enterasys has not altered its non-infringement position. Extreme disclosed in July 2007 the exact products it believed infringed Extreme's patents. In response, Enterasys stated in August 2007 the basis for its belief that the accused Enterasys products do not infringe the asserted claims. There is no reason why Extreme could not have asserted these additional claims back in July, which would have allowed Enterasys to adequately address the claims. This is especially valid where Extreme

---

[4] In contrast to Extreme, Enterasys has narrowed the claims in dispute by dropping the '042 patent and by eliminating at least one additional previously asserted claim.

5

did modify its infringement contentions in August when it added, without objection, two new infringement claims.

Extreme's claim that it needed deposition testimony and additional documents to support its claims mistaken. First, the deposition in question occurred after Extreme served the new infringement claims in November. Second, Extreme did not notice any deposition relating to infringement issues until after the Court held the Markman hearing. Thus, any alleged late notice of information is the direct result of Extreme's lack of diligence. Third, Enterasys produced the documents that Extreme relies upon to support infringement early on in the litigation. In fact, Extreme produced infringement charts earlier in this litigation that contain references to the very documents Extreme now uses to support the new claims.[5]

Moreover, Extreme's own expert reports may reveal that its late disclosure is merely a tactic to prejudice Enterasys. Should Extreme's infringement report include a detailed infringement analysis of the new claims asserted on December 6, 2007, it would establish that Extreme knew of these claims well in advance of submitting the expert report, but chose to withhold the information, which placed Enterasys at an extreme disadvantage.

---

[5] Moreover, Extreme has been in possession of these documents since the inception of the case. At the November 29-30, 2007 deposition of Arnold Sodder, Extreme used Enterasys documents with Extreme Bates labels to question Mr. Sodder. (*See* Decl. A. McKenna, ¶ 8). The Extreme Bates labels suggests that Extreme used these particular documents, the same documents that form the basis of the added claims, to perform their initial Rule 11 investigation to file its case against Enterasys back in April.

**B.     Enterasys will suffer prejudice if Extreme is allowed to include these six additional claims.**

Not only is Extreme without justification to include these additional claims, Enterasys is prejudiced by its inability to address in its expert report these newly submitted claims. With the Court issuing its Markman ruling on November 21, 2007, Enterasys had two weeks to draft its expert reports on non-infringement and invalidity in accordance with the Court's construction of certain terms at issue. There was simply no time available to also perform a proper investigation of the new claims, especially where Extreme added three claims twenty-four hours before Enterasys expects to serve its expert report. At a minimum, an adequate investigation would include, but not be limited to, an analysis of the claims and their terms to see whether additional claim construction by the Court is required, the determination of how, if at all, the new claims read on the accused Enterasys products, additional research for applicable prior art and the formation of an expert opinion as to the validity of those claims.

Indeed, there can be no reason to assert dependent claims at this late hour other than to avoid a summary judgment ruling on invalidity. As the Court is aware, because dependent claims incorporate all elements from a previously disclosed claim within the patent, and then add one or more limitations to those elements, a dependent claim cannot be infringed if the independent claim from which it depends is not infringed. However, because the dependent claim has additional limitations, it can be more difficult to invalidate under an anticipation or obviousness argument. Before asserting the additional six claims, Extreme only alleged that Enterasys infringed independent claims in both the '438 and '248 patents. Enterasys diligently performed its discovery obligations and disclosed the prior art it believed invalidates Extreme's patent.

7

There can be no other reason to include dependent claims at this late stage other than to avoid Enterasys' stated invalidity positions.

### III. CONCLUSION

Extreme's late inclusion of additional claims is unwarranted and provided without any justifiable excuse. Moreover, the addition of the claims will prejudice Enterasys because it does not have adequate time to investigate the claims and incorporate them into Enterasys' expert reports due on December 7, 2007. Therefore, Enterasys asks that this Court preclude Extreme from adding new dependent claims at this late stage of the litigation.

Respectfully Submitted,

ENTERASYS NETWORKS, INC.,

By its attorneys,

/s/ Alan E. McKenna
Christopher P. Sullivan, Esq.
Stephen L. Coco, Esq.
Alan E. McKenna, Esq.
John E. LaPlante, Esq.
Pascale Guerrier, Esq.
Robins, Kaplan, Miller & Ciresi, L.L.P.
800 Boylston Street, 25th Floor
Boston, MA 02199
Phone: 617.267.2300
Fax: 617.267.8288

Stacie E. Oberts, Esq.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
Phone: 612.349.8500
Fax: 612.339.4181

Lester A. Pines
Cullen Weston Pines & Bach LLP
122 West Washington Ave., Suite 900

8

Madison, WI 53703
Phone: 608.251.0101
Fax: 608.251.2883

Dated: December 6, 2007

**CERTIFICATE OF SERVICE**

I, <u>Alan E. McKenna</u>, hereby certify that on December 7, 2007, I caused the attached document to be served upon Plaintiff's counsel of record via E-Mail and First Class Mail, as indicated below:

James D. Peterson
Godfrey & Kahn, S.C.
One East Main Street, Suite 500
Post Office Box 2719
Madison, WI 53701-2719
Phone: 608.257.3911
Fax: 608.257.0609

Terrence P. McMahon
David L. Larson
McDermott Will & Emery LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Phone: 650.813.5000
Fax: 650.813.5100

Margaret M. Duncan
Stephen T. Scherrer
Amol A. Parikh
MCDERMOTT WILL & EMERY LLP
227 West Monroe Street, Suite 4400
Chicago, Illinois 60606-5096
Phone: 312.372.2000
Fax: 312.984.7700

/s/ Alan E. McKenna_____

Robins, Kaplan, Miller & Ciresi, L.L.P.
800 Boylston Street, 25th Floor
Boston, MA 02199
Phone: 617.267.2300
Fax: 617.267.8288

BN1 35042680.2