IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

EXTREME NETWORKS, INC.,

                                      OPINION AND ORDER

        Plaintiff,

                                      07-cv-229-bbc

    v.

ENTERASYS NETWORKS, INC.,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

    A jury found that several routers sold by defendant Enterasys Networks, Inc. infringed one or more of three patents owned by plaintiff Extreme Networks, Inc. relating to management of network traffic: U.S. Patents Nos. 6,104,700, 6,678,248, and 6,859,438. After the verdict, defendant renewed its motion for judgment as a matter of law under Fed. R. Civ. P. 50 and plaintiff moved for a permanent injunction and attorney fees. For the reasons stated below, the motions for judgment as a matter of a law and attorney fees will be denied; the motion for a permanent injunction will be granted in part.

        A.  Defendant's Motions for Judgment as a Matter of Law

1

The first question is whether defendant properly preserved all of the arguments it raised in its Rule 50(b) by first asserting them in one of its Rule 50(a) motions. Plaintiff says that defendant waived the following arguments in its Rule 50(b) motion:

- plaintiff failed to show during trial that the weighted fair queuing and bw-limit functions of the Matrix router satisfy the "QoS metric" limitation in claim 15 of the '248 patent;

- plaintiff failed to show during the trial that any of the accused products "remove the data packet from the queue if a difference between the current measure and the minimum QoS falls within a threshold," as required by claim 15 of the '248 patent;

- plaintiff failed to show that the Expedition router has a "scheduler" as required by claim 5 of the '438 patent;

- plaintiff failed to show at trial that the Matrix router is designed for use in a network employing a non-deterministic access protocol, as required by claim 21 of the '700 patent.

I agree with plaintiff that defendant did not raise any of these arguments in its Rule 50(a) motions, which means it may not assert them now. Laborers' Pension Fund v. A & C Environmental, Inc., 301 F.3d 768 (7th Cir. 2002); Mid-America Tablewares, Inc. v. Mogi Trading Co., 100 F.3d 1353, 1363-64 (7th Cir. 1996); Downes v. Volkswagen of America,

2

<u>Inc.</u>, 41 F.3d 1132, 1139-40 (7th Cir. 1994). Defendant argues that its Rule 50(a) motions were sufficient because in each of them it argued that plaintiff had failed to meet the same claim elements that it identifies as deficient in its Rule 50(b) motion. The rule itself makes it clear that defendant is wrong. A Rule 50 motion must "specify . . . the law and facts that entitle the movant" to judgment as a matter of law. Fed. R. Civ. P. 50(a)(2). In other words, the motion must be specific enough to give notice to the plaintiff of the hole in its case so that it can attempt to put in more evidence while there is still an opportunity to do so. Defendant cannot preserve all possible arguments simply by listing the elements of a claim and arguing generally that the plaintiff did not meet them. This gives the plaintiff no notice of the law *or* facts that might entitle defendant to judgment as a matter of law.

Defendant raised several other arguments for the first time in its reply brief; those arguments are waived as well.

The only argument advanced by defendant that it did not forfeit is that plaintiff failed to adduce sufficient evidence that the Matrix X and X-Pedition routers provide a "minimum bandwidth" or "minimum QoS" as required by claim 15 of the '248 patent, claim 5 of the '438 patent and claims 21 and 29 of the '700 patent. The record at trial on these questions was little different from summary judgment. Plaintiff relied again on the documents created by defendant as well as Broadcom, the manufacturer of the chips in defendant's products. Plaintiff's expert, Daniel Davis, testified that these documents showed that the weighted fair

3

queuing function of defendants' products satisfied the "minimum QoS" and "minimum bandwidth" elements. Although defendant disagrees with that expert's assessment, it fails to show that the jury was not entitled to credit the testimony.

Defendant also challenges the jury's award of $201,213 in compensatory damages. Although it was not required to, the jury wrote that it was awarding $67,071 "for each of the three patents infringed." Defendant argues that the jury should not have awarded an equal amount of damages for each patent because the X-Pedition routers were not an accused device with respect to the '700 patent.

The problem with this argument is that it ignores the standard of review. To side with defendant on this issue, I would have to find that no rational jury could have found that plaintiff was entitled to $67,071 for the defendant's infringement of the '700 patent. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 151 (2000); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Defendant does not acknowledge this standard, much less develop an argument that it has been met. Rather, defendant simply assumes that the jury used identical methodology in awarding damages for each patent. However, that is not an assumption defendant is entitled to make: the jury did not disclose its methodology and the verdict form did not require it to. Because defendant fails to develop an argument that no rational jury could have awarded the damages it did for the infringement of the '700 patent, that argument is waived.

B.  <u>Plaintiff's Motion for a Permanent Injunction</u>

The same standard for obtaining a permanent injunction applies in patent cases as in any other case.  The plaintiff must show that (1) it has suffered an irreparable injury; (2) the remedies available at law are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. <u>eBay Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388 (2006).

Defendant fills a 40-page brief with reasons it believes the court should not grant an injunction, but a number of them are simply rearguments of the merits or are otherwise unrelated to the four-part test from <u>eBay</u>.  I have disregarded these.  With respect to the factors that are relevant to determining whether injunctive relief is appropriate, it is undisputed that plaintiff and defendant are competitors in the router market and that plaintiff's routers embody the patented technology.  Thus, this case is little different from <u>Innogenetics, N.V. v. Abbott Laboratories</u>,  2007 WL 4960850, *25 (W.D.Wis. 2007), in which I concluded that a patent owner had shown irreparable harm and an inadequate remedy at law because the parties were competitors.  I noted that a "plaintiff *is* harmed when defendant sells directly competing products. . . . [I]ts reputation and market share are at stake. Its consumer base sees the products as plaintiff's. Its reputation for innovation and being a market leader are affected when defendant cuts into its market share. . . . Plaintiff

5

has shown that money damages alone would not remedy its injury." Id. at *25-26. The facts are the same in this case with one important exception: the jury did not award plaintiff damages for future violations as the jury in Innogenetics did. It was because the jury awarded damages for a "long-term license to sell [accused] products" in that case that the court of appeals concluded that a permanent injunction was unnecessary. Innogenetics, N.V. v. Abbott Laboratories, 512 F.3d 1363, 1379-80 (Fed. Cir. 2008). In this case, defendant identifies no long-term license fee that would make plaintiff whole.

Further, defendant identifies no unfair hardship it would experience or any disservice to the public interest that would occur if a properly tailored injunction was issued. Although it is true that in eBay, the Court held that an injunction should not issue automatically in every case of infringement, the reasons identified by several of the justices for denying injunctive relief are not present in this case. E.g., eBay, 547 U.S. at 396 (Kennedy, J., concurring) (damages may be sufficient when plaintiff "use[s] patents not as a basis for producing and selling goods but, instead, primarily for obtaining licensing fees")

The remaining question is what the scope of the injunction should be. Plaintiff has proposed the following order with respect to injunctive relief:

> Additionally, the Court finds that a PERMANENT INJUNCTION for Enterasys' infringement of the '700, '248 and '438 patents is warranted. Accordingly, IT IS FURTHER ORDERED, ADJUDGED AND DECREED that:
> 
> 1. Enterasys and its subsidiaries, parents, affiliates, officers, directors, agents,

servants, representatives, attorneys, employees, licensors, licensees, successors in interest and assigns, and those persons in active concert or participation with them who receive actual notice of this Order (collectively, "Enterasys"), are hereby restrained and permanently enjoined, pursuant to Federal Rule of Civil Procedure 65(d) and 35 U.S.C. § 283, from manufacturing, using, offering to sell, or selling in the United States, or importing into the United States, (i) the X-Pedition 8000, the X-Pedition 8600, and the Matrix X series products ("the Accused Products"), either alone or in combination with any other product; (ii) any switch, router or data packet forwarding device capable of performing traffic shaping and/or weighted fair queuing in a manner substantially similar to the Accused Products; and (iii) any other existing or future product that is not more than a colorable variation of the Accused Products (the products described in (i), (ii) and (iii) above are collectively referred to as "the Infringing Products").

2. Enterasys is further restrained and permanently enjoined from making, using, offering to sell, or selling in the United States products or services associated with the Infringing Products, or products or services that are not more than colorable variations thereof (collectively, the "Related Infringing Products and Services").

3. Enterasys is further restrained and permanently enjoined from inducing infringement of the Infringed Claims by encouraging, supporting, aiding, or abetting the manufacture, use, offer for sale, sale or importation for sale of the Infringing Products and/or the Related Infringing Products and Services in the United States.

4. Enterasys is further restrained and permanently enjoined from contributing to the infringement of the Infringed Claims by manufacturing, using, offering for sale, selling or importing for sale the Infringing Products and/or the Related Infringing Products and Services in the United States.

5. Enterasys shall destroy its existing inventory of the Infringing Products within ten days of this Order.

6. If Enterasys intends to make, use, sell, or offer for sale in the United States, or import into the United States, a switch, router or data packet forwarding device that it contends does not infringe the Infringed Claims, Enterasys shall, sixty (60) days prior to offering for sale the product to a U.S. customer, (i) make the product available for Extreme Networks' inspection; and (ii) provide sufficient documentation

relating to the product as reasonably requested by Extreme Networks, pursuant to the terms of the Protective Order in this case.

7. Within ten days of this Order, Enterasys shall provide written notice of this Order, and the injunction ordered herein, to its subsidiaries, parents, affiliates, officers, directors, agents, servants, representatives, attorneys, employees, licensors, licensees, successors in interest and assigns, and those persons in active concert or participation with them, including any and all manufacturers, distributors, retailers, and service providers who have been involved in the making, using, selling, offering for sale or importing of any Infringing Products in the United States since April 20, 2007; all other persons or entities involved in any way with the making, using, selling, offering for sale or importing of any Infringing Products in the United States since April 20, 2007; and all entities that have purchased the Infringing Products in the United States.

8. Enterasys shall take whatever means are necessary or appropriate to ensure that this Order is properly complied with.

9. This injunction shall run until the expiration of the Extreme Networks' patents, which is February 3, 2018, with respect to the '700 and '438 patents, and March 16, 2020, with respect to the '248 patent.

10. This Court retains jurisdiction over Enterasys to enforce any and all aspects of this Order for Final Judgment and Permanent Injunction.

11. The Court further retains jurisdiction to award Extreme Networks amounts for supplemental damages, interest, costs, attorneys fees and such other or further relief as may be just and proper.

12. This is a Final Judgment and is appealable.

I agree with defendant that the injunction is overbroad in its current form. The reason is simple: the scope of an injunction must be tailored to the scope of the violation found. e360 Insight v. The Spamhaus Project, 500 F.3d 594, 604 -605 (7th Cir. 2007).

In this case, the jury found only that a limited subset of defendant's products infringed several claims of plaintiff's patents. It did not find that its patents covered "any switch, router or data packet forwarding device capable of performing traffic shaping and/or weighted fair queuing," that any "products or services associated with the" accused products constituted infringement or that defendant had engaged in indirect infringement of any kind. Thus, the portions of plaintiff's proposed order seeking to enjoin defendant from engaging in these activities must be deleted. (The Court of Appeals for the Federal Circuit has held that the injunction may extend to products "not more than colorably different from the adjudicated" products, International Rectifier Corp. v. IXYS Corp., 383 F.3d 1312, 1316 (Fed Cir. 2004), so I have left that language in the order.)

Plaintiff says that the injunction should extend beyond what the jury found because plaintiff declined to litigate claims for indirect infringement "in order to streamline the trial." Dkt. #411, at 20. Apparently, plaintiff's argument is that it should receive a free pass at proving a violation because it was motivated by altruism. But it makes no difference whether plaintiff decided to drop these claims as an act of deep concern for the court and the jury, a calculated trial strategy or simply a realization that it could not win the claims. The point is that plaintiff did not press the claims and it must live with the consequences of that choice.

I also agree with defendant that the list of entities and person it seeks to enjoin is too

9

broad. Rule 65 permits an injunction to extend to "the parties," "the parties' officers, agents, servants, employees, and attorneys" and "other persons who are in active concert or participation with" the listed persons. The injunction will be limited accordingly.

Plaintiff does not even try to defend its proposed paragraph six, which requires defendant to allow plaintiff to inspect any future "switch, router or data packet forwarding device," or the proposed requirement that defendant provide notice of the order to "all other persons or entities involved in any way with the making, using, selling, offering for sale or importing of any Infringing Products in the United States since April 20, 2007; and all entities that have purchased the Infringing Products in the United States." Those provisions are overbroad and will be omitted.

I do not agree with the remaining objections raised by defendant. First, defendant says that the injunction should not apply to the X-Pedition routers because it no longer manufactures or sells those routers. This is an argument that the need for an injunction is moot. Plaintiff's burden in prevailing on that argument is "a heavy one." County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979). It would have to show that it was "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources, 532 U.S. 598, 609 (2001) (internal quotations omitted). See also Global Relief Foundation, Inc. v. O'Neill, 315 F.3d 748, 751 (7th Cir. 2002) (case was not moot

10

"while any possibility remained" that defendant would revert to past conduct). Because defendant has not met this burden (or even attempted to), I decline to exclude the X-Pedition routers from the scope of the injunction.

Also, the proposed order to destroy the accused products that remain in defendant's inventory is similar to the one in Innogenetics. Defendant identifies no noninfringing uses for these products, so there is no valid reason to keep them. However, I agree with defendant that the order should run from the final resolution of any appeal by defendant rather than from the date of this opinion.

### D. Attorney Fees

Plaintiff seeks attorney fees under 35 U.S.C. § 285 and 28 U.S.C. § 1927. Perhaps not surprisingly, plaintiff devotes more pages to this issue than it does to any other. Unfortunately, what plaintiff and so many other prevailing parties do not seem to realize is that attorney fees are not awarded as a matter of course in patent cases. Sections 285 and 1927 are not fee shifting statutes like 42 U.S.C. § 1988. They are sanctions for asserting a frivolous position or engaging in serious misconduct before the court or the PTO. Counsel waste their own time and their client's money when they file motions under these statutes in run-of-the-mill cases or cases in which both sides engaged in questionable litigation tactics.

Section 285 applies to "exceptional" cases only. There was nothing "exceptional"

11

about this case, at least nothing that would warrant an award of attorney fees to plaintiff. Both sides were equally tenacious. Although plaintiff may have carried the day in most respects, this does not mean automatically that defendant's positions had no merit. Plaintiff points to a number of arguments made by defendant that were criticized by the court, but if this were enough to justify fees under § 285, plaintiff would be in little better position than defendant. Plaintiff advanced several of its own indefensible positions throughout the case, such as its argument that it was entitled to assert new claims at any point in the litigation.

Similarly, plaintiff accuses defendant of engaging in "gamesmanship" in discovery and the rest of the case, but its memory is highly selective. Plaintiff engaged in many of the same practices of which it now accuses defendant. For example, plaintiff refused to agree to a dismissal *with prejudice* of one of defendant's counterclaims unless defendant agreed to release plaintiff from liability not just with respect to plaintiff's current products but to all products it might manufacture in the future. Plaintiff has never attempted to justify this refusal as being grounded in a reasonable interpretation of the law.

Like § 285, the application of § 1927 is very limited. It allows a court to award attorney fees against a party "who . . . multiplies the proceedings in any case unreasonably and vexatiously." Interestingly enough, § 1927 has been raised in this court almost exclusively in the context of patent cases. E.g., Silicon Graphics, Inc. v. ATI Technologies,

12

Inc., 569 F. Supp. 2d 819, 822 (W.D. Wis. 2008) (denying motion for attorney fees under § 1927 in patent case); Vehicle IP, LLC v. General Motors Corp., 2008 WL 2273682, 1 (W.D. Wis. 2008) (same); Thermal Design, Inc. v. Indoor Courts of America, Inc., 2004 WL 1638180, *2 (W.D. Wis. 2004) (same); Bruno Independent Living Aids, Inc. v. Acorn Mobility Services Ltd., 277 F. Supp. 2d 965, 967 (W.D. Wis. 2003) (same).

Again, plaintiff's request for fees under § 1927 is somewhat ironic. After all, it was plaintiff that attempted unsuccessfully to expand the scope of the lawsuit just before summary judgment and then refused to take no for an answer by filing an equally unsuccessful motion for reconsideration when its motion to amend its complaint was denied.

In short, this case was hardly a model for smooth, respectful and intelligent litigation. But the fault for the case's problems cannot be laid on defendant's door step alone. Both sides should have learned from this case how not to litigate a patent lawsuit in the future.

ORDER

IT IS ORDERED that

1. Defendant Enterasys, Inc.'s renewed motion for judgment as a matter of law, dkt. #409, and its request for a hearing on that motion, dkt. #415, are DENIED. The clerk of court is directed to enter judgment in the amount of $201,213 in favor of plaintiff on its claims that defendant's Matrix X routers have infringed claims 21 and 29 of U.S. Patent No.

6,104,700, that the Matrix X, X-Pedition 8000 and X-Pedition 8600 routers have infringed claim 15 of U.S. Patent No. 6,678,248 and that the Matrix X, X-Pedition 8000 and X-Pedition 8600 routers have infringed claim 5 of U.S. Patent No 6,859,438.  In addition, the clerk is directed to enter judgment in favor of plaintiff on defendant's counterclaims for infringement of U.S. Patents Nos. 5,195,181 and 5,430,727.

2.  The clerk is directed to enter judgment in favor of defendant on plaintiff's claims that the Matrix X, X-Pedition 8000 and X-Pedition 8600 routers infringe claim 1 of the '248 patent and claim 1 of '438 patent.  These claims were dismissed by plaintiff with prejudice during the trial.

3.  Plaintiff's motion for attorney fees, dkt. #412, is DENIED.

4.  Plaintiff's motion for a permanent injunction, dkt. #405, is GRANTED IN PART.  Defendant is ENJOINED as follows:

- Defendant, defendant's officers, agents, servants, employees, attorneys and other persons who are in active concert or participation with them who receive actual notice of this order are permanently enjoined from manufacturing, using, offering to sell, or selling in the United States, or importing into the United States, the X-Pedition 8000, the X-Pedition 8600, and the Matrix X series products, either alone or in combination with any other product and any other existing or future product that is not more than a colorable variation of

14

    the X-Pedition 8000, the X-Pedition 8600 and the Matrix X series products.

- Defendant shall destroy its existing inventory of the X-Pedition 8000, the X-Pedition 8600 and the Matrix X series products within ten days of the final resolution of any appeal by defendant.

- Within ten days of this order, defendant shall provide written notice of the order and injunction to its officers, agents, servants, employees, attorneys and other persons who are in active concert or participation with them.

5. This injunction shall run until the expiration of plaintiff's patents, which is February 3, 2018, with respect to the '700 and '438 patents, and March 16, 2020, with respect to the '248 patent.

6. This court retains jurisdiction to enforce any and all aspects of this order and to award plaintiff supplemental damages, interest or costs.

Entered this 28th day of October, 2008.

                                   BY THE COURT:

                                   /s/

                                   _____
                                   BARBARA B. CRABB
                                   District Judge